```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**MAUREEN LONGANACRE,**

    Plaintiff,

v.                                Civil Action No. 2:20-CV-00587

**NATIONAL COUNCIL ON
COMPENSATION INSURANCE, INC.,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is defendant NCCI Holdings, Inc.'s ("NCCI Holdings")[1] Motion for Summary Judgment, filed July 12, 2021. ECF No. 31.

### I. Background

This case arises from NCCI Holdings' termination of plaintiff Maureen Longanacre ("Longanacre") in May of 2019. Compl. ¶ 5, ECF No. 1-1. It is undisputed that Longanacre began

---

[1] The named defendant in this case is National Council on Compensation Insurance, Inc. NCCI Holdings maintains that it was Longanacre's employer and therefore the proper defendant. In a footnote it "requests that the pleadings be amended to substitute the proper Defendant, NCCI Holdings, Inc." ECF No. 31, at 1 n.1. The court notes that Longanacre declined to address this issue in her response and has not, to date, filed any motions to amend her pleading. Because it was NCCI Holdings that filed the motion for summary judgment, the court will refer to the defendant as NCCI Holdings throughout this memorandum opinion.

working for NCCI Holdings in January 2003, as a research analyst.  Mem. Supp. Def.'s Mot. Summ. J., ECF No. 32, at 3 ("ECF No. 32"); Pl. Dep., ECF No. 31-1, at 19, 30.  About a year later, she became a senior underwriting analyst, and then after another six to eight months, she became a dispute consultant.  ECF No. 32, at 3; Pl. Dep. 32–33.  Longanacre stayed in her dispute consultant position until November of 2018.  ECF No. 32, at 3; Pl. Dep. 33.

Longanacre started working for NCCI Holdings at its Florida headquarters.  Pl. Dep. 34.  During her tenure at NCCI Holdings, Longanacre asked for and received three transfers.  In 2006, with NCCI Holdings' approval, she relocated to Louisiana for medical and family reasons.  Id.  Once she moved to Louisiana, she began working from home.  Id. at 35.  Approximately four years later, in 2010, Longanacre was approved for a transfer to Texas.  Id. at 35–36.  In September 2018, Longanacre requested and received a transfer from Texas to West Virginia.  ECF No. 32, at 4; Pl. Dep. 36.

The record is void of any complaints about Longanacre's performance from her hiring in 2003 until sometime in 2018.  NCCI Holdings contends that customers began complaining about Longanacre as early as March 2018.  ECF No. 32, at 5.  According to NCCI Holdings, Longanacre was given a

verbal warning sometime after the initial complaint was lodged. Id.; O'Brien Dep, ECF No. 31-2, at 35–36 (testifying that she was "sure" she talked with Longanacre about the March 2018 client incident). NCCI Holdings further maintains that between March and November 2018, two additional complaints were received regarding Longanacre's performance or attitude at work. ECF No. 32, at 5.[2]

On November 8, 2018, Longanacre's supervisor, Lesley O'Brien, gave Longanacre a "Written Warning" that detailed her allegedly unprofessional conduct over the preceding eight months. Written Warning, ECF No. 31-1, at 268. Longanacre contends that the written warning was the first time NCCI Holdings raised any problems with her work since her hiring in 2003. Pl. Dep. 21.

The warning stated as follows:

> Any recurrence of the issues we have discussed (or similar issues) or any failure to make quick progress towards improving your performance will result in further disciplinary action up to and including termination. Your goal is to improve your performance immediately and to sustain that improvement.

---

[2] Although the specific dates of these incidents are not provided, NCCI Holdings states that one customer asked to have Longanacre "removed from their file" and a consultant filed a complaint describing Longanacre as "combative." ECF No. 32, at 5; Written Warning, ECF No. 31-1, at 268; O'Brien Dep. at 71–75.

> As a result of this warning, you are considered under disciplinary action and are unable to post for any positions outside of your Division until your performance meets expectations. You may however apply for lower level positions within your Division with management approval.

Written Warning, at 269.

On January 7, 2019, Longanacre also provided a "Written Warning Response" in which she stated she was "sincerely sorry if [her] communications were perceived as unprofessional." Written Warning Response, ECF No. 31-1, at 271. In her response she claimed that she had handled more than 2500 disputes for NCCI and had never "been accused of such disgusting behavior" in the past. Id. Longanacre proceeded to state, "I understand the need to improve my communications skills. I will do my best to ensure that I do not offend anyone." Id.

Longanacre received an End-of-Year Performance Rating of "Below Expectations" for 2018. 2018 Performance Review, ECF No. 31-1, at 277–83. The review was signed by Longanacre on February 19, 2019. Id. at 283. At the time of the review, her manager stated "2018 was not a good year, but it is a new year now and I want you to focus on your new role and contributing to the team." Id. at 282.

4

Concurrent with the November 2018 written warning, Longanacre was "transferred" to an underwriting filing consultant position. ECF No. 32, at 2. The nature of this transfer is branded differently by the parties. NCCI Holdings characterizes it as a "lateral transfer within the department" that limited Longanacre's contact with customers but still "leverage[ed] her technical skills and background." Id. at 6. Longanacre, on the other hand, views the transfer as a demotion in preparation for her planned termination the following May. Longanacre Dep. 24, 39. Despite the diverging views of the transfer, it is undisputed that Longanacre's pay rate did not change as a result of the November 2018 transfer. Longanacre Dep. 39.

At the time of her transfer, Longanacre was 61 years old, and her position was filled by a younger employee by the name of Veruschka Zachtshinsky. ECF No. 35, at 5; Pl. Dep. 24. Zachtshinsky testified that she was 43 years old when she took over the dispute consultant position. Zachtshinsky Dep., ECF No. 31-6, at 37. Zachtshinsky was the only candidate considered for the position. Donegan Dep., ECF No. 31-3, at 45.[3]

---

[3]   Ms. Donegan is the chief regulatory officer for NCCI Holdings. Donegan Dep. 5. She testified that she has the ultimate hiring and firing authority for the regulatory division Longanacre and Zachtshinsky worked in. Id.

5

Although Longanacre did not receive the written warning and transfer until November of 2018, her supervisor testified that she began thinking about replacing Longanacre with Zachtshinsky in March. O'Brien Dep. 96–98.

Longanacre maintains that she trained Zachtshinsky from December 2018 until at least February 2019 but continued to help Zachtshinsky as needed until her termination. ECF No. 35, at 7; Zachtshinsky Dep. 32–33. NCCI Holdings contends that Longanacre's claim is without merit, as Longanacre admitted during her own deposition that she did not "really train" Zachtshinsky. ECF No. 32, at 8; Pl. Dep. 119.

On May 16, 2019, NCCI Holdings terminated Longanacre. ECF No. 32, at 8. Longanacre was 61 years old at the time of her termination. ECF No. 32, at 3; Pl. Dep. 24. Longanacre was informed of her termination via a virtual meeting with O'Brien and Yvette Klepper, the human resources director for NCCI Holdings. Klepper Dep., ECF No. 31-7, at 92. O'Brien testified that she provided Longancre with multiple reasons for her termination, including that she was difficult to get ahold of on specific instances and because "some work product stuff that wasn't done." O'Brien Dep. 49. Klepper suggested that the termination was due to Longanacre's performance, lack of professionalism, and failure to improve. Klepper Dep. 71–72.

Longanacre states that she was not given a written explanation of her termination and avers that the only verbal explanation she received was that she "was disengaged." Pl. Dep. 24.

NCCI Holdings did not document any verbal or written warnings or other issues with Longanacre between the written warning and transfer she received in November 2018 and her termination in May 2019. O'Brien Dep. 59, 69–70 (testifying that she did not recall any documented counseling or additional written warnings); Donegan Dep. 103 (testifying that she was not aware of any documented performance or disciplinary issues). O'Brien insisted, however, that she had "check-in meetings" with Longanacre during that time. O'Brien Dep. 60.

After her termination, Longanacre's position was filled by someone four to five years her junior. ECF No. 32, at 8; Klepper Decl., ECF No. 31-5, at ¶ 8.

Longanacre filed her lawsuit on July 20, 2020, in the Circuit Court of Kanawha County, West Virginia. Compl. 1. The complaint asserts one cause of action, which states:

> Plaintiff Maureen Longanacre's termination from her employment was based upon, in whole or in part, plaintiff's age, in violation of the West Virginia Human Rights Act, West Virginia Code §5-11-9, or alternatively, in violation of the substantial public policy of the State of West Virginia as articulated in the decision of the

7

> West Virginia Supreme Court of Appeals in <u>Harless v. First National Bank in Fairmont</u>, 162 W. Va. 116, 246 S.E2d 270 (1978), in that age discrimination in employment contravenes the public policy of this State articulated in the West Virginia Human Rights Act, West Virginia Code, 5-11-1, et seq.

<u>Id</u>. at ¶ 7.

The case was removed to this court's docket on September 9, 2020, on the basis of diversity jurisdiction.  ECF No. 1.

## II.  Legal Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.</u>, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

### III. Analysis

**A. Age Discrimination Under the West Virginia Human Rights Act**

The West Virginia Human Rights Act ("the Act") prohibits "employers" from discriminating against employees on the basis of their race, religion, color, national origin, ancestry, sex, age, blindness, disability, and/or familial status. W. Va. Code § 5-11-9(1); W. Va. Code § 5-11-3(h). An "employer" under the Act includes "any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or in the preceding calendar year." W. Va. Code § 5-11-3(d).

NCCI Holdings declares that it does not meet the definition of an "employer" under the Act because it "did not

employ twelve (12) or more employees in West Virginia at any given period in 2018 or 2019." ECF No. 32, at 11.

Inasmuch as Longanacre has produced no evidence to rebut NCCI Holdings' claim that it did not have the requisite number of employees in West Virginia to be an employer under the Act, the court finds that she cannot proceed with this cause of action. See Williamson v. Greene, 490 S.E.2d 23, 29–30 (W. Va. 1997). Accordingly, NCCI Holdings' motion for summary judgment as to Longanacre's West Virginia Human Rights Act claim is granted.

B. Wrongful Discharge in Violation of Substantial Public Policy

As an alternative to her claim under the West Virginia Human Rights Act, Longanacre pleads that her termination amounts to a wrongful discharge in violation of substantial public policy. Compl. ¶ 7.

In Harless v. First National Bank in Fairmont, the Supreme Court of Appeals of West Virginia held that:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., 246 S.E.2d 270, 271 (W. Va. 1978).

10

West Virginia caselaw has unequivocally established that the tenants of the West Virginia Human Rights Act "clearly constitute[]" a substantial public policy of the state. See Williamson, 490 S.E.2d at 32–33. Accordingly, where an employee is unable to proceed on a cause of action for employment discrimination under the Act, she may still pursue a Harless-type action to vindicate her wrongful discharge. See id. at 33.

The parties disagree on the elements Longanacre must prove to prevail on her Harless wrongful discharge claim. Longanacre avers that the court should apply the very framework that is used to analyze West Virginia Human Rights Act claims. Pl.'s Resp. Def.'s Mot. Summ. J., ECF No. 35, at 12 ("ECF No. 35"). NCCI Holdings submits that Longanacre must prove each of the elements for the common law tort of wrongful discharge. ECF No. 32, at 15–16.

The court agrees with NCCI Holdings. West Virginia caselaw has established that wrongful discharge claims are analyzed using the analysis set forth in Feliciano v. 7-Eleven, Inc., 559 S.E.2d 713, 723 (W. Va. 2001). See Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 537 (W. Va. 2018); see also Mull v. Griffith, No. 5:17-CV-94, 2019 WL 5295189, at *40–41 (N.D.W. Va. Oct. 18, 2019).

Accordingly, the elements of wrongful discharge that Longanacre must prove are:

> 1. [Whether a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
> 2. [Whether] dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
> 3. [Whether t]he plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
> 4. [Whether t]he employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Feliciano*, 559 S.E.2d at 723.

NCCI Holdings concedes that Longanacre can establish the first element but argues that she "cannot present any evidence demonstrating any of the remaining elements." ECF No. 32, at 16. The court disagrees and finds that Longanacre has produced genuine disputes of material fact as to each of the elements for wrongful discharge.

As to the causation element, Longanacre has presented evidence that after a long and largely successful career with NCCI Holdings, she was twice replaced by younger employees, at the time of her 2018 transfer and the time of her termination. Klepper Decl. ¶ 8. While NCCI Holdings maintains that both of these employees were over the age of 40 and therefore of

12

protected status, West Virginia has adopted the "substantially younger" rule from O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996). See Knotts v. Grafton City Hosp., 786 S.E.2d 188, 187 (W. Va. 2016).[4] Here, the employee who replaced Longanacre at the time of her transfer, Zachtshinksy, was substantially younger in age, while her replacement at the time of her termination was four or five years younger.

Longanacre has also provided evidence that the employee who filled Longanacre's position after her November 2018 transfer had less experience in dispute consultation than Longanacre. See Donegan Dep. 116 (admitting that Longanacre was more experienced in dispute consultation than Zachtshinsky).[5]

---

[4] The Supreme Court of Appeals of West Virginia has declined to adopt "an absolute definition" for "substantially younger," and has instead held that a determination should be made on a case-by-case basis. Knotts, 786 S.E.2d at 198–99. The court has noted, however, that "age differences of ten or more years have generally been held to be sufficiently substantial to satisfy the 'substantially younger' rule." Id. (quoting Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003)(internal quotation marks omitted)). Age differences of less than 10 years are generally not considered to be substantial in the absence of additional evidence that age was a factor in the adverse employment decision. See Hoffmann v. Primedia Special Int. Publ'ns, 217 F.3d 522, 524–25 (7th Cir. 2000); Sayre v. FMRS Mental Health Council, Inc., No. CIV.A. 5:04-0333, 2006 WL 1896603, at *6 n.9 (S.D.W. Va. July 10, 2006), aff'd, 219 F. App'x 329 (4th Cir. 2007).

[5] Neither party submitted any argument about the experience of the employee who replaced Longanacre after her May 2019 termination.

Although the most persuasive of Longanacre's evidence pertains to the circumstances surrounding her November 2018 transfer rather than her May 2019 termination, Longanacre has argued that the transfer was just the first step in NCCI Holdings' plan to oust her. The weight of that argument is yet to be determined, but at this stage, Longanacre has created a genuine dispute of material fact as to whether her termination was causally linked to her protected status as an employee over the age of 40.

Regarding both the causation and overriding justification elements, despite NCCI Holdings' claim that it terminated Longanacre for her poor performance, Longanacre testified that she was essentially blindsided by the November 2018 written warning and transfer. See Pl. Dep. 21. Longanacre has also presented evidence that her supervisors contemplated her transfer months before the majority of the alleged performance issues. See O'Brien Dep 96–97. Moreover, NCCI failed to document any performance or conduct concerns with Longanacre between her transfer and termination.[6]

---

[6] To this end, an additional factual dispute remains about whether NCCI Holdings failed to follow its own progressive discipline policy. While NCCI Holdings maintains that its written policy did not require it to follow progressive discipline steps, Longanacre's supervisors testified that the practice existed. Compare Performance Counseling Actions, ECF No. 31-2, at 143, and Klepper Dep. 17, with O'Brien Dep. 40

Additionally, Longanacre argues that NCCI Holdings has provided varied reasons for her termination, creating an inference that the reasons provided are not true. ECF No. 35, at 16–17; see Pl. Dep. 24 (testifying that she was told she was being terminated for being "disengaged"); O'Brien Dep. 49 (testifying she terminated Longanacre for being hard to get ahold of and for not completing unspecified work product); Klepper Dep. 71–72 (testifying that Longanacre was terminated for her poor performance and lack of improvement).[7] Although the provided reasons for her termination could all be reconciled, when viewed in the light most favorable to Longanacre, a jury could find that NCCI Holdings' stated reasons for terminating Longanacre are not true.

Finally, given these disputed facts, a material question also remains as to the jeopardy element of the wrongful discharge claim. Should a jury believe the facts as presented by Longanacre, it could reasonably conclude that dismissing an employee under similar circumstances would run afoul of West

---

(testifying as to the existence of the progressive policy), and Donegan Deo. 117 (testifying that NCCI Holdings does not "axe" employees "right away," but works with and coaches them).

[7] NCCI Holdings submitted a "Declaration of Yvette Klepper in Support of Defendant's Motion for Summary Judgment," which purports to have attached the "talking points" O'Brien and Klepper discussed delivering to Longanacre at the time of her termination. Klepper Decl., ECF No. 31-5, at 2. No exhibits are attached to the declaration.

Virginia's substantial public policy against discriminatory terminations.

This is a close case. However, inasmuch as numerous factual disputes remain, the court denies NCCI Holdings' motion for summary judgment. Longanacre may submit her <u>Harless</u> wrongful discharge claim to a jury.

IV. Conclusion

Accordingly, it is ORDERED that defendant NCCI Holdings, Inc.'s motion for summary judgment is GRANTED, in part, and DENIED, in part. The motion is granted to the extent it seeks to dismiss Longanacre's claim under the West Virginia Human Rights Act. The motion is otherwise denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: October 1, 2021

John T. Copenhaver, Jr.
Senior United States District Judge